SALTER, J.
(dissenting).
I respectfully dissent. Under the Stand Your Ground (SYG) immunity statute[11] and applicable case law,[12] the trial court is the initial fact finder regarding a defendant’s claim of immunity. The SYG hearing is nothing more or less than a mini-trial conducted by the court without a jury on the fact-intensive issues framed by the statute: in the present case, did the defendant reasonably believe that deadly force was necessary to prevent imminent death or great bodily harm to himself or another or to prevent the imminent commission of a forcible felony? The defendant bears the burden of proving these elements by a preponderance of the evidence, and the trial court’s findings of fact are presumptively correct for purposes of our review. Those findings can be reversed here only if they are not supported by competent substantial evidence. The trial court’s legal conclusions are reviewed de novo. State v. Vino, 100 So.3d 716, 719 (Fla. 3d DCA 2012) (“In conducting its review, an appellate court must restrain itself from the natural human impulse to consider that its own Anew of the facts is superior to that of a trial judge.”).
Regarding the facts, four judges have now split evenly on whether the defendant’s decisions to 1) take his Glock .45 out of the glove compartment of his truck, folloAving a verbal altercation within the restaurant, and 2) fire five shots into the two decedents, after a single punch was thrown outside the restaurant, met the requirements for SYG immunity. One was the trial judge who actually heard and observed thirteen -witnesses under oath and subjected to cross-examination.[13] This Court was of course required to conduct its review of the testimony by reading it and -without observing the witnesses as they testified.
The facts are also ambiguous when it comes to the surveillance video recorded by the camera affixed to the outside of the restaurant. Did deceased victim Carraza-na appear to be reaching for a weapon, as the defendant testified? The video has only two frames per second (human vision is equivalent to 60 frames per second), and the camera caught the action from above and behind the incident. As described below, the few video freeze-frames of the incident seem to me to disprove, rather than prove the defendant’s testimony. These uncertainties confirm that the defendant’s claim is a classic, fact-based issue for the jury at trial.
*1168 Nor do I agree that the trial court committed any error of law in ruling on the defendant’s motion. The trial court’s reference to the defendant’s conflicting statements regarding the fear that purportedly caused him to shoot both decedents— whether a fear of imminent death or great bodily harm to (a) himself, (b) Chico Cor-rea, or (c) both of them — is a reflection (and not the only one) on the defendant’s disparate accounts of the incident, going to credibility, and not a legal error (application of a “subjective” standard regarding the defendant’s state of mind as opposed to an “objective” standard regarding a reasonably prudent person’s state of mind), as characterized by the majority. For these reasons, we should deny the defendant’s petition without prejudice to his right to present SYG immunity and self-defense as affirmative defenses at trial.

Additional Facts

A number of additional facts in the record before us warrant specific consideration. The first is that the defendant and his friend Mr. Correa went outside to smoke cigarettes three times during their visit to the restaurant on the evening in question. During the first and second of those cigarette breaks, the defendant was unarmed — his firearm was inside the glove compartment of his truck — and he was wearing a sun shirt. Only at the time of his third exit from the restaurant (after the verbal exchanges inside the restaurant, and after the defendant had told others that he planned to return home to his pregnant wife), did he instead unlock his truck, put on a sweatshirt, retrieve his firearm and holster from the glove compartment, and tuck the holstered firearm into his belt under the sweatshirt. Instead of going home to his wife as he had said, the defendant lingered on the sidewalk with Mr. Correa for a third, fateful smoke.
It was a cool February evening in Miami when the defendant had first arrived at the restaurant (well after 9:00 p.m.), but he had not put on his sweatshirt for the first and second cigarette breaks. He did not unlock his truck and put on his sweatshirt until the sweatshirt was used to cover his holster and Glock .45.
A second factual point for consideration is the punch thrown by Mr. Gonzalez at Mr. Correa’s right eye. The testimony established that: Mr. Correa did not fall to the ground; his injury was treated with an ice pack at the scene; his vital signs were normal when he was checked by a fire rescue lieutenant at the scene after the incident; and he declined to be transported to an emergency room or other medical provider for treatment that night. Mr. Gonzalez’s blow drew blood and, according to Mr. Correa’s description of a later diagnosis, fractured his eye socket, but ordinarily an assessment of “great bodily harm” is a jury issue. Cloninger v. State, 846 So.2d 1192 (Fla. 4th DCA 2003). Classification of Mr. Correa’s injury as a forcible felony would also turn on whether the single punch intentionally or knowingly caused “great bodily harm, permanent disability, or permanent disfigurement.”[14]
A third factual consideration involves the surveillance video of the incident and freeze-frame images from that video. The images do not corroborate the testimony by Mr. Correa and the defendant that the second decedent, Mr. Carrazana, seemed to be reaching under a jacket as if for a weapon. To the contrary, Mr. Carrazana is not fully visible in the images until time stamp label 23:54:09. In that image, the *1169 defendant was off the sidewalk, three feet or so into a vacant parking place, and Mr. Carrazana had both hands well away from his waistline, extended as in a normal gait. Both hands were visible and neither held a weapon. His sleeves were rolled up.
In the next frame, stamped 23:54:10, the defendant’s line of sight to Mr. Carrazana was blocked by Mr. Gonzalez. In the very next frame, 23:54:11, both Mr. Gonzalez and Mr. Carrazana are staggering from the first gunshot or gunshots that hit them.[15] The evidence at the SYG hearing did not establish that either decedent carried a knife, displayed a knife, or that Mr. Correa or the defendant ever saw a knife before the defendant opened fire. The two restaurant knives later found outside the door (after the incident) were not shown by the defense to have been obtained, displayed, or held by either decedent at any time.
The fourth and final factual point warranting additional discussion is also pertinent in self-defense and SYG cases — the relative size and weight of the parties involved in an attack claimed to justify the use of deadly force. In the present case, the decedents were five feet, eight inches, and 217 pounds (Mr. Gonzalez), and five feet, six inches, and 156 pounds (Mr. Car-razana). Mr. Correa, punched by Mr. Gonzalez, was six feet, one inch, and 285 pounds, while the defendant was six feet, two inches, and weighed 285 pounds.
Having addressed these four additional factual points that were part of the record before the trial court, I next turn to the majority’s conclusion that the trial court applied the incorrect legal standard to the evidence. As noted at the outset, the trial court’s rulings on matters of law are subject to de novo review here.

Montanez and the “Objective, Reasonable Person" Standard

While I agree with the majority that the “objective, reasonable person” standard applies to an assessment of whether the use of deadly force is justifiable (under Montanez v. State, 24 So.3d 799, 803 (Fla. 2d DCA 2010), and Fla. Std. Jury Instr. (Crim.) 3.6(f)), I disagree with the majority’s further conclusions regarding the trial court’s adherence to that standard and the remedy applicable to the alleged failure to apply that standard.
As to the argument that the trial court erroneously applied a subjective, state-of-the-defendant’s mind standard, it must be remembered that the “objective, reasonable person” is not a hypothetical, unknowing stranger dropped into the altercation and the defendant’s shoes a microsecond before Mr. Gonzalez punched Mr. Correa. The “objective, reasonable person” is a person situated in the same circumstances as the defendant and knowing what the defendant knew. Montanez at 803 n. 6; Slip Op. at 1164.
In the present case, the trial court correctly assessed those circumstances and the defendant’s state of knowledge; the trial court did not otherwise dwell on the defendant’s subjective state of mind or intentions. The fact-intensive determination of whether a reasonable and prudent person in the defendant’s shoes might have perceived that Mr. Carrazana was reaching for a deadly weapon turned on the court’s assessment of the defendant’s credibility. The defendant and his friend of 17 *1170 years were the only living eyewitnesses to that important fact. The video and freeze-frame images did not definitively prove or disprove the reasonableness of that alleged perception — an alleged perception which turned out to be erroneous.
Simply stated, the justifiability of this defendant’s use of force, or of a hypothetical “reasonably prudent person’s” use of force, turns on a fact dependent on the defendant’s credibility. The majority disagrees with the trial court regarding the trial court’s assessment of the defendant’s credibility, but that is an assessment to which we should defer. There is competent, substantial evidence in this record to support the trial court’s determination that the defendant failed to prove his entitlement to immunity. In such a case, the petition should be denied. Mederos v. State, 102 So.3d 7, 10 (Fla. 1st DCA 2012).
My second departure from the majority’s analysis involves the remedy that would be appropriate if it were established (though it has not been) that the trial court committed legal error by applying the wrong standard. The majority would grant the petition and thereby mandate the discharge of the defendant on grounds of immunity. However, since jeopardy never attached — the SYG hearing is a mini-bench trial on a jurisdictional issue— the correct remedy based on the majority’s conclusion would be a remand to the trial court to apply the allegedly-correct legal standard and rule accordingly. That is the result when, for example, the trial court erroneously grants a motion to dismiss in a criminal case and we reverse and remand for reinstatement of the information. State v. Gomez, 103 So.3d 258 (Fla. 3d DCA 2012).

Conclusion

For these reasons, I respectfully dissent. I would deny the defendant’s petition for prohibition without prejudice to his rights to raise self-defense and SYG immunity as affirmative defenses and issues for resolution by a jury. I would also vacate this Court’s order of August 15, 2013, which stayed criminal trial proceedings in this case pending further order of this Court.

. § 776.032, Fla. Stat. (2008).

. Darling v. State, 81 So.3d 574 (Fla. 3d DCA), review denied, 107 So.3d 403 (Fla.2012).

. “The legislature’s enactment of section 776.032 placed the burden of weighing the evidence in ‘Stand Your Ground’ cases squarely upon the trial judge's shoulders.” State v. Gallo, 76 So.3d 407, 409 (Fla. 2d DCA 2011).

. Compare § 784.03(1), Fla. Stat. (2008) (misdemeanor battery) to § 784.041(1), Fla. Stat. (2008) (felony battery) and § 784.045, Fla. Stat. (2008) (aggravated battery, also a felony).

. The forensic evidence confirmed that one gunshot, fired from several feet away, hit Mr. Gonzalez (who had been in front of Mr. Car-razana and was closest to the defendant), who then turned and staggered several steps away from Mr. Mobley before collapsing and dying. Additional gunshots (also fired from several feet away) hit, and ultimately killed, Mr. Car-razana.